## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF NEW YORK

ASHLEY ISAAC, as Executrix of
of the Estate of SHAUN HUMPHREY, Deceased,

          Plaintiff,                         **AMENDED COMPLAINT**

vs.

                                        Case No. 1:24-cv-01007

ERIE COUNTY,
SHERIFF JOHN C. GARCIA,
in his Official and Individual Capacity
as Sheriff of Erie County,
HOLLY BRYANT,
JOSEPH PULEO,
THOMAS KNUPFER,
SGT PETE ATHANS,
SGT MICHAEL PERKINS,
SGT MARK SCANIO,
SGT TIMOTHY MCMAHON,
DEPUTY KENNETH BIENKO,
DEPUTY OWEN TIMM,
DEPUTY LOUIS AUGUSTINE,
DEPUTY PHIL ROBINSON,
DEPUTY GAVIN O'NEIL,
DEPUTY ALEX SADOWSKI,
DEPUTY JEFFREY HUBBARD,
DEPUTY CHRISTOPHER IMHOF,
DEPUTY JENNIPHER BURDICK,
DEPUTY BRIAN THOMPSON,
DEPUTY DANIEL HERBEGER,
JOHN DOE 1 through 10 (said Erie County supervisor(s) and/or
Erie County Sheriff Department supervisor(s) or employee(s) or staff on
Duty involved in the incident from August 7, 2023 to August 8, 2023 and
underlying claims),

          Defendants.

_____

1

These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical 'torture or a lingering death…'

*Estelle v Gamble*, 429 US 97, 103, (U.S. 1976).

Plaintiff, by and through her attorney, Melissa D. Wischerath of LIPSITZ GREEN SCIME CAMBRIA, LLP, hereby brings this Complaint and Jury Demand and alleges as follows:

## INTRODUCTION

1.    Erie County, former Erie County Sheriff Howard, and current Erie County Sheriff Garcia, chose — for nearly two decades — to violate the constitutional rights of the people in their custody.[1] Though under a legal duty to provide adequate medical care for those in his custody, Sheriff Garcia has publicly admitted "We're set up to fail, We don't have the means to give individuals that come through the doors adequate medical help ..." See, "Why Do People Keep Dying in Erie County's Jails?" available at https://newrepublic.com/article/171009/erie-county-sheriff-garcia-howard last accessed on June 9, 2023.

2.    Erie County, former Erie County Sheriff Howard and current Erie County Sheriff Garcia have knowingly and recklessly denied medical care to the men and women in the Erie County Holding Center (ECHC) for years, causing numerous investigations and deaths.[2]

---

[1] See e.g., September 2009 US Department of Justice lawsuit against Erie County and Erie County Sheriff Timothy Howard available at https://www.justice.gov/archive/opa/documents/erie-complaint.pdf ; US Department of Justice December 2014 Settlement With the County of Erie, New York to Prevent Disability Discrimination at the Erie County Jail available at https://www.justice.gov/file/189161/download last accessed on June 9. 2023; March 2021 lawsuit filed by Attorney General James on behalf of the New York State Commission of Correction (SCOC) against Erie County and Erie County Sheriff Timothy Howard available at https://ag.ny.gov/sites/default/files/2021.03.17_opening_papers_binder.pdf last accessed on June 9, 2023.

[2] Id.  The investigations, reports, and decrees are hereby incorporated by referenced as is more fully set forth herein.

3.      In February of 2018, the New York State Commission of Correction, published "THE WORST OFFENDERS REPORT: THE MOST PROBLEMATIC LOCAL CORRECTIONAL FACILITIES OF NEW YORK STATE."[3]

4.      After years of review, the Commission identified the ECHC as one of the top five worst offenders for violating state and federal laws, explaining "the five local jails that are deemed the 'worst offenders' for being in violation of state law. These facilities pose an ongoing risk to the health and safety of staff and inmates and, in instances, impose cruel and inhumane treatment of detainees in violation of their Constitutional rights." At the time of the 2018 report, the NYS Commission had four open inmate mortality investigations at the Erie County Holding Center from 2012-2018 involving: inadequate medical and mental health care; minimum standards violations; and excessive use of force against detainees experiencing a medical and/or mental health crisis in the jail.[4]

5.      Under former Sheriff Timothy B. Howard, and now current Sheriff John C. Garcia, a detainee in the Holding Center in downtown Buffalo or the Erie County Correctional Facility in Alden died, on average, every four and a half months.[5]

6.      Despite the state and constitutional mandates to provide detainees with adequate medical care and the staggering death rate, ECHC knowingly and recklessly lacks the means to give individuals that come through its doors adequate medical help.

---

[3] https://scoc.ny.gov/pdfdocs/Problematic-Jails-Report-2-2018.pdf last accessed on June 12, 2023.
[4] Id.
[5] Jail deaths substantially higher than reported available at https://www.investigativepost.org/2024/09/10/erie-county-jail-deaths/ last accessed on February 26, 2025.

7.    Since at least 2012, following the horrific and tragic death of Richard Metcalf, the Sheriff failed to provide its deputies with proper policy guidance and training on how to properly observe and attend to the medical needs of detainees subjected to prone restraint.

8.    It is well known throughout correctional and law enforcement and medical communities that holding a subject in a position of prone restraint for prolonged periods of time can be deadly.

9.    Compressing any detainee, especially one who was found unresponsive and in need of medical aide, in a prone position with weight on their back and/or abdomen and/or ankles tied restricts their ability to breathe and can result in asphyxiation.

**FACTS**

10.    On or about August 7, 2023, Shaun Humphrey involuntarily walked into the Erie County Holding Center ("ECHC") after being falsely arrested from his residence for an alleged minor crime.

11.    He never came home.

12.    Mr. Humphrey had a past known medical history including mental health illnesses, COPD, and traumatic brain injury.

13.    On August 8, 2023, Mr. Humphrey began experiencing a seizure that necessitated medical attention.

14.    Post-seizure, Mr. Humphrey had agonal breathing and was sweating profusely.

15.    In response to his seizure activity and agonal breathing, medical personnel defendants, deputies, and supervisors responded to the cell where Mr. Humphrey was housed.

16.     Defendant Jane Doe 1, a medical provider for the County who worked in the holding center responded to the scene and said, "this is the one we put on detox…yeah he just went on."

17.     Defendant Jane Doe 2, another medical provider who responded to the scene, following Mr. Humphrey's seizure, after observing him not respond to his name and hearing his breathing said to the supervisor on the scene, Defendant Sgt. Pete Athans, "Let's just send him out." Defendant Sgt Athans responded, "You're sending him out? To which Defendant Jane Doe 2 said, "We're sending him out." Defendant Athans asked, "Car or Ambulance?" Defendant Jane Doe 2 replied, "Ambulance."

18.     Instead of being adequately cared for or transported to a hospital, Mr. Humphrey was given two (2) doses of Narcan and Ativan by Defendant Jane Doe 1 and 3.

19.     Thereafter, several deputies led by Defendant SGT ATHANS, including Defendants SGT PETE ATHANS, SGT MICHAEL PERKINS, SGT MARK SCANIO, SGT TIMOTHY MCMAHON, DEPUTY KENNETH BIENKO, DEPUTY OWEN TIMM, DEPUTY LOUIS AUGUSTINE, DEPUTY PHIL ROBINSON, DEPUTY GAVIN O'NEIL, DEPUTY ALEX SADOWSKI, DEPUTY JEFFREY HUBBARD, DEPUTY CHRISTOPHER IMHOF, DEPUTY JENNIPHER BURDICK, DEPUTY BRIAN THOMPSON, DEPUTY DANIEL HERBEGER, unlawfully restrained Mr. Humphrey, placed him in a dangerous prone position with deputies kneeling on decedent's neck and back for approximately seven (7) minutes, including at times while his ankles were restrained. If not directly participating in the unlawful kneeling and restraint, the Defendants SGT PETE ATHANS, SGT MICHAEL PERKINS, SGT MARK SCANIO, SGT TIMOTHY MCMAHON, DEPUTY KENNETH BIENKO, DEPUTY OWEN TIMM, DEPUTY LOUIS AUGUSTINE, DEPUTY PHIL ROBINSON, DEPUTY GAVIN

O'NEIL, DEPUTY ALEX SADOWSKI, DEPUTY JEFFREY HUBBARD, DEPUTY CHRISTOPHER IMHOF, DEPUTY JENNIPHER BURDICK, DEPUTY BRIAN THOMPSON, DEPUTY DANIEL HERBEGER failed to intervene despite the opportunity to do so.

20.     Neither the medical defendants named above, Defendants HOLLY BRYANT, JOSEPH PULEO, THOMAS KNUPFER, or the Jane Doe medical defendants Jane Doe 1 and Jane Doe 2 (hereinafter referred to collectively at times the "Medical Defendants"), nor the deputies and supervisor Defendants SGT PETE ATHANS, SGT MICHAEL PERKINS, SGT MARK SCANIO, SGT TIMOTHY MCMAHON, DEPUTY KENNETH BIENKO, DEPUTY OWEN TIMM, DEPUTY LOUIS AUGUSTINE, DEPUTY PHIL ROBINSON, DEPUTY GAVIN O'NEIL, DEPUTY ALEX SADOWSKI, DEPUTY JEFFREY HUBBARD, DEPUTY CHRISTOPHER IMHOF, DEPUTY JENNIPHER BURDICK, DEPUTY BRIAN THOMPSON, DEPUTY DANIEL HERBEGER, (collectively referred to herein at times as the "Deputy and Supervisor Defendants") bothered to monitor his breathing or medical condition throughout the defendants unlawful prone restraint of Mr. Humphrey nor intervene despite the necessity to do so. [6]

21.     Instead the Medical Defendants and Deputy Supervisor Defendants, and others idly stood by and did nothing to help or intervene even though first responders had been called and were available to provide medical aide having arrived at the facility at 12:45 p.m.

22.     No deputy attempted to move from Mr. Humphrey's body or roll him onto his side.

23.     As a result of the prolonged prone restraint, Mr. Humphrey went into cardiac arrest not far from the cell where he was found unresponsive approximately twenty minutes before.

---

[6] Plaintiff incorporates by reference the Axon Body Cam Footage of the incident of Defendant Sgt Athens, as well as the Incident Report of Defendant Sgt Athens. Exhibits 1 and 2 are attached hereto as Exhibit 1 and 2 respectively. Due to the sizing of the video, a CD marked Exhibit 1 will be hand-delivered to the Court and is incorporated here by reference.

24.     Once cardiac and completely unresponsive, EMS personnel were permitted to work on Mr. Humphrey. After 25 minutes, Mr. Humphrey was rushed to the emergency room where he was intubated and sedated and diagnosed with an anoxic brain injury.

25.     Mr. Humphrey never recovered.

26.     Tragically, he was declared dead on August 15, 2023.

27.     The Medical Defendants and Deputy Supervisor Defendants, failed to provide adequate and required medical care to Shaun Humphrey, a person in their custody.

28.     It is well known throughout the correctional, law enforcement, and medical communities for decades that placing a subject in a prone restrained position negative affects a person's ability to breathe.

29.     As a result of the position Mr. Humphrey was forcibly held in, he was unable to breathe, something the Medical Defendants and Deputy Supervisor Defendants knew or should have known from their training on positional asphyxia.

30.     The Medical Defendants and Deputy Supervisor Defendants willful and deliberate indifference to Shaun Humphrey's serious medical needs, and unlawful prone restraint, directly led to Mr. Humphrey's untimely, easily preventable, and unjustifiable death.

31.     Upon information and belief, the Medical Defendants and Deputy Supervisor Defendants failed to: sufficiently monitor or treat, or supervise and/or train, those responsible for Shaun Humphrey; adequately screen or supervise and/or train, those responsible for screening Shaun Humphrey for medical conditions; failed to timely or adequately respond to requests for medical care or supervise and/or train, those responsible for Shaun Humphrey; and denied or delayed for excessive periods the provision of necessary chronic and specialty care, including transport to a hospital or supervise and/or train, those responsible for Shaun Humphrey.

32.    The Medical Defendants and Deputy Supervisor Defendants failure to provide adequate medical care resulted in the death of Shaun Humphrey.

33.    The County, the Defendant Sheriff, the Medical Defendants and Deputy Supervisor Defendants, have been aware of the constitutionally and legally inadequate care and conditions in the County jails for years, including use of improper and prolonged prone restraint, thereby possessing actual and constructive notice of these ongoing and recurring violations.

34.    Erie County is the appointing authority for the delivery of jail incarcerated individual health services pursuant to Correction Law section 501 for the ECHC.

35.    Reports from multiple outside agencies and consultants have repeatedly documented unlawful prone restraint, inadequate medical care, poor education, and poor training of corrections staff in prone restraint, and in recognizing the signs and symptoms of medical conditions and rendering aide. See e.g., https://scoc.ny.gov/system/files/documents/2024/04/ellis-james-erie-hc_redacted.pdf last accessed on November 9, 2024.

36.    As more fully set forth below, upon information and belief, the Medical Defendants and Deputy Supervisor Defendants failed to properly train or modify its training to deputies and staff, including but not limited to, matters related to the reasonable and appropriate use of force while detained and experiencing a medical crisis, and intervention in the excessive use of force by fellow deputies.

37.    Not using force on a detainee experience a medical crisis, transporting a detainee experiencing a medical crisis, and intervening in the use of force is a usual and recurring situation with which the County, Defendant Sheriff, and the Medical Defendants and Deputy Supervisor Defendants encounter on a regular basis.

38.    The County, Defendant Sheriff, Medical Defendants, and Deputy Supervisor Defendants have failed to provide detainees with mandated medical care and treatment, and instead of treatment, have at times, inflicted punishment, including unlawful use of force, and prolonged prone restraint upon citizen detainees experiencing a medical crisis or are otherwise seeking medical aid.

**PARTIES**

39.    Plaintiff, at all times hereinafter mentioned was and still is a resident of the Hamlet of Lawtons located within the County of Erie and the State of New York.

40.    On or about the 22nd day of April, 2024, plaintiff, Ashley Isaac, was appointed Executrix of the Estate of Shaun Humphrey, pursuant to an Order of the Surrogate's Court of the Seneca Nation of Indians, and Letters Testamentary of the Estate of Shaun Humphrey were served on the plaintiff, and she is duly qualified and thereafter acted and is still acting as such Executrix.

41.    A notice of claim was served on behalf of the Shaun Humphrey on defendants, in duplicate, which notice of claim sets forth the name and post office address of the claimant, the name and post office address of his attorneys, the nature of the claim, the time when the place where, and the manner in which the claim arose, together with the items of damages and injuries then known to exist, and was served upon defendants within ninety (90) days of the date upon which the claim arose. At least thirty (30) days have elapsed since the service of the notice of claim, and defendants have failed and neglected to adjust or pay the said claim. An examination pursuant to NY General Municipal Law Section 50-h was completed.

42.    Defendant, ERIE COUNTY (the "County") is a governmental subdivision created under the laws of the State of New York. The County is charged by the laws of the State of New York with authority to maintain the Erie County Holding Center (ECHC). The Erie County

Holding Center in Buffalo, New York is a pretrial facility owned by Erie County; many people held there are not convicted of a crime.

43.     ERIE COUNTY SHERIFF JOHN C. GARCIA ("Garcia") is the Sheriff of Erie County and is responsible for the day-to-day operations of ECHC. In his official capacity as Sheriff, he has the custody, control, and charge of the ECHC, and the pre-trial detainees confined within. Sheriff Garcia is sued in both his individual and official capacity.

44.     Upon information and belief, at all times hereinafter mentioned, defendants, HOLLY BRYANT, JOSEPH PULEO, THOMAS KNUPFER, SGT PETE ATHANS, SGT MICHAEL PERKINS, SGT MARK SCANIO, SGT TIMOTHY MCMAHON, DEPUTY KENNETH BIENKO, DEPUTY OWEN TIMM, DEPUTY LOUIS AUGUSTINE, DEPUTY PHIL ROBINSON, DEPUTY GAVIN O'NEIL, DEPUTY ALEX SADOWSKI, DEPUTY JEFFREY HUBBARD, DEPUTY CHRISTOPHER IMHOF, DEPUTY JENNIPHER BURDICK, DEPUTY BRIAN THOMPSON, DEPUTY DANIEL HERBEGER, JOHN DOE 1 through 10 (said Erie County supervisor(s) and/or Erie County Sheriff Department supervisor(s) or employee(s) or staff on Duty involved in the incident from August 7, 2023 to August 8, 2023 and underlying claims), were and still are residents of the County of Erie and the State of New York. He/she/they are sued in his/her/their individual and official capacities.

45.     Upon information and belief, at all times hereinafter mentioned, defendant, Garcia, was acting within his authority as an Erie County Sheriff and acting under color of state law.

46.     Upon information and belief, at all times hereinafter mentioned, defendants, defendants, HOLLY BRYANT, JOSEPH PULEO, THOMAS KNUPFER, SGT PETE ATHANS, SGT MICHAEL PERKINS, SGT MARK SCANIO, SGT TIMOTHY MCMAHON, DEPUTY KENNETH BIENKO, DEPUTY OWEN TIMM, DEPUTY LOUIS AUGUSTINE, DEPUTY

PHIL ROBINSON, DEPUTY GAVIN O'NEIL, DEPUTY ALEX SADOWSKI, DEPUTY JEFFREY HUBBARD, DEPUTY CHRISTOPHER IMHOF, DEPUTY JENNIPHER BURDICK, DEPUTY BRIAN THOMPSON, DEPUTY DANIEL HERBEGER, JOHN DOE 1 through 10 (said Erie County supervisor(s) and/or Erie County Sheriff Department supervisor(s) or employee(s) or staff on Duty involved in the incident from August 7, 2023 to August 8, 2023 and underlying claims), and acting under color of state law.

47.    Upon information and belief, at all times hereinafter mentioned, defendants Erie County and/or Sheriff Garcia were responsible for the supervision, administration, policy, practices, procedures, and customs of the Erie County Sheriff's Department, and are responsible for the hiring, training, discipline, and control of the ECHC staff.

48.    At all times hereinafter mentioned and in all their actions described herein, defendants, pursuant to the authority vested in the employees, servants, and agents of Erie County and/or the Sheriff, were acting under color of the statutes, ordinances, regulations, policies, customs, and usages of Erie County and/or Sheriff Garcia and under color of state law.

49.    At all times hereinafter mentioned and in all their actions described herein, the employees, servants, agents, and sheriffs at the ECHC were acting within the scope of their employment and incidental to their otherwise lawful duties and functions.

50.    Upon information and belief, at all times hereinafter mentioned, defendants, Erie County and/or Sheriff Garcia, owned, maintained, operated, managed, directed, controlled, and staffed the Erie County Holding Center, located at 40 Delaware Avenue within the City of Buffalo, County of Erie and State of New York, and were responsible for the care and custody of all detainees at said facility.

51.    Upon information and belief, at all times hereinafter mentioned, defendants Erie County and/or Sheriff Garcia employed and controlled the individuals responsible for the hiring, training, and discipline of defendants, HOLLY BRYANT, JOSEPH PULEO, THOMAS KNUPFER, SGT PETE ATHANS, SGT MICHAEL PERKINS, SGT MARK SCANIO, SGT TIMOTHY MCMAHON, DEPUTY KENNETH BIENKO, DEPUTY OWEN TIMM, DEPUTY LOUIS AUGUSTINE, DEPUTY PHIL ROBINSON, DEPUTY GAVIN O'NEIL, DEPUTY ALEX SADOWSKI, DEPUTY JEFFREY HUBBARD, DEPUTY CHRISTOPHER IMHOF, DEPUTY JENNIPHER BURDICK, DEPUTY BRIAN THOMPSON, DEPUTY DANIEL HERBEGER, JOHN DOE 1 through 10 (said Erie County supervisor(s) and/or Erie County Sheriff Department supervisor(s) or employee(s) or staff on Duty involved in the incident from August 7, 2023 to August 8, 2023 and underlying claims). Defendant, Erie County and/or Sheriff Garcia, employed and controlled the individuals responsible for the assignment, dispatch, oversight and supervision of defendants, defendants, HOLLY BRYANT, JOSEPH PULEO, THOMAS KNUPFER, SGT PETE ATHANS, SGT MICHAEL PERKINS, SGT MARK SCANIO, SGT TIMOTHY MCMAHON, DEPUTY KENNETH BIENKO, DEPUTY OWEN TIMM, DEPUTY LOUIS AUGUSTINE, DEPUTY PHIL ROBINSON, DEPUTY GAVIN O'NEIL, DEPUTY ALEX SADOWSKI, DEPUTY JEFFREY HUBBARD, DEPUTY CHRISTOPHER IMHOF, DEPUTY JENNIPHER BURDICK, DEPUTY BRIAN THOMPSON, DEPUTY DANIEL HERBEGER, JOHN DOE 1 through 10 (said Erie County supervisor(s) and/or Erie County Sheriff Department supervisor(s) or employee(s) or staff on Duty involved in the incident from August 7, 2023 to August 8, 2023 and underlying claims). Defendant, Erie County and/or Sheriff Garcia, also created, instituted, and oversaw enforcing the policies, practice, and procedures at issue in this action.

52.     Defendant, Erie County and/or Sheriff Garcia was responsible for the hiring, training, supervision, discipline, retention, and promotion of employees of the ECHC staff.

## FIRST CAUSE OF ACTION

### AGAINST ALL DEFENDANTS
### (Wrongful Death)

53.     Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as if set forth fully herein.

54.     Mr. Humphrey left surviving next of kin, including his daughters and grandchildren.

55.     Mr. Humphrey's next of kin were dependent upon decedent for support, maintenance, nurture, comfort, advice, aid, and society, which they are now deprived of because of the aforesaid incident.

56.     Mr. Humphrey's next of kin suffered loss of love, society, protection, comfort, companionship, and consortium resulting from Mr. Humphrey's death, which they are now deprived of because of the aforesaid incident.

57.     As a result of the aforesaid incident, medical, funeral, and burial expenses have been incurred.

58.     By reason of Mr. Humphrey's death caused by the negligence, neglect, and constitutional violations of the defendants, his distributee has been damaged, and the amount of damages shall exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**SECOND CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

**42 U.S.C. §1983 AND FOURTEENTH AMENDMENT**

**(Deliberate Indifferent to Serious Medical Need in Violation of the Fourteenth Amendment)**

59.    Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as if set forth fully herein.

60.    Shaun Humphrey, while under the care, custody and control of the defendants, at the ECHC, was caused to suffer serious injuries, due to his failure to prevent use of prolonged prone restraint; to ensure for and/or provide timely and proper medical treatment to Shaun Humphrey; in his failure to provide medications and proper medical treatment that Mr. Humphrey required; the denial of treatment by defendants amounts to deliberate indifference to a serious medical need, in violation of the Fourteenth Amendments' prohibition against cruel and unusual punishment and 42 U.S.C. § 1983; in his failure and refusal to make a reasonable accommodation by providing Mr. Humphrey with access to proper treatment and medications, rather than prolonged prone restraint, thereby discriminating against him on the basis of disability, even though accommodation would in no way alter the nature of the healthcare program, and unconstitutionally deprived him of his liberty and he was otherwise tortuously and maliciously harmed by the actions of the defendants, all in violation of Title 42 of the United States Code, Section 1983 et. seq. and the AMERICANS WITH DISABILITIES ACT. Said negligent and improper delay in medical treatment led to the untimely and wrongful death of Shaun Humphrey on or around August 15, 2023.

61.    Being found having a seizure and unresponsive prior to any prone restraint, constituted a serious medical need.

62.     Upon information and belief, the defendants failed to prevent prolonged prone restraint on those experiencing a medical crisis and/or provide medical transport for detainees suffering from seizures and unresponsive even though the medical standard of care warrants it.

63.     The defendants knew of and disregarded or should have known of the excessive risk of harm to Shaun Humphrey if restrained in the prone position for a prolonged period of time and/or was not provided prompt and appropriate medical treatment for his seizure and unresponsive state.

64.     The failure to provide and/or denial of access to the standard of care caused Shaun Humphrey physical and psychological suffering and injuries resulting in death.

65.     The denial of treatment and failure by defendants to avoid prolonged prone restraint and to provide medical care and treatment to Shaun Humphrey constitutes a deliberate indifference to a serious medical need, in violation of the Fourteenth Amendment and 42 U.S.C. §1983.

66.     As a result of the foregoing, plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### THIRD CAUSE OF ACTION

### AGAINST ERIE COUNTY AND SHERIFF JOHN C. GARCIA

### (Monell Claim-Municipal Liability Pursuant to 42 U.S.C. Section 1983)

67.     Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as if set forth fully herein.

68.     The County and Sheriff knew or should have known that their supervisory policy as related to prone restraint, especially on detainees suffering medical events.

69.     The County and Sheriff knew or should have known that the custom, policy, or practice of using prone restraint on its detainees, especially ones suffering a medical event, was constitutionally infirm because of the known risks and death attributable to it, and because it delayed medical aid to those in need of it.

70.     The County and Sheriff knew or should have known of these ongoing customs, policies, and practices.

71.     Yet County and Sheriff having actual or constructive knowledge of these customs, policies, and practices, the County and Sheriff exhibited deliberate indifference to these ongoing policies, customs, and practices.

72.     A reasonable supervisor would conclude that the County's and/or Sheriff's official policy to effectively not supervise its deputies, and its custom, policy, or practice of placing detainees in prone restraint, would foreseeably result, by deliberate indifference, in the injuries and/or deaths of detainees such as Mr. Humphrey (i.e., an individual with clearly-established medical needs).

73.     The above-described actions violated Mr. Humphrey's clearly-established constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution.

74.     The particular injuries suffered by Mr. Humphrey and his estate are the obvious consequence of the failure to supervise and its unconstitutional customs.

75.     Defendants County and/or Sheriff, established, condoned, ratified, and/or encouraged customs, policies, patterns, and practices that directly and proximately caused the deprivation of the civil and constitutional rights of Shaun Humphrey, and the damages and

injuries described herein. He did so with deliberate indifference to the rights of the detainee.
These written and unwritten policies, customs, patterns, and practices included:

    a) Failing to adequately staff their department with sufficient deputies, staff, and employees (including health care workers), for welfare checks, medical assessment, monitoring, and medical treatment.

    b) Failing to train, supervise and discipline deputies, staff, and employees at the ECHC responsible for welfare checks, medical assessment, monitoring, and medical treatment.

    c) Failing to utilize qualitative benchmarks to assess the quality of medical care ECHC provides to its detainees.

    d) Failing to take steps to ensure that deputies, staff, and employees at the ECHC do not use prolonged prone restraint on detainees.

    e) Failing to have in place, or failing to follow, a policy or procedure to prevent officers from using excessive force against and/or improperly restraining and/or isolating detainees experiencing medical issues.

    f) Retaining deputies, staff, and employees, when they knew or should have known of their propensity to abuse their position of authority at the ECHC.

    g) Failing to have in place, or failing to follow, a policy or procedure to prevent officers from using excessive force on detainees when exhibiting medical symptoms such as seizures and/or unresponsiveness.

    h) Failing to properly screen, during the booking process, and supervise thereafter, prisoner, inmate, and/or detainee for serious medical needs.

    i) Failing and omitting to properly and in a timely manner administer, provide and/or ensure for adequate medical treatment, including transport,

assessments, monitoring, examinations, and medications.

j)  Failing to properly and in a timely manner respond to medical complaints, symptoms, and requests for treatment and/or medication.

k)  Deliberately, purposefully, and knowingly denying detainees access to necessary medical treatment.

l)  Failing to properly and adequately train, supervise, instruct their employees, staff and/or officers about positional asphyxia, prone restraint, and the proper and timely medical treatment of detainees; and in recognizing the signs and symptoms of positional asphyxia.

m)  Failing to immediately seek hospital treatment for detainees in need of it.

n)  Failing to recognize the signs and symptoms of positional asphyxia.

o)  Failing to review findings of the NYS Commission of Correction pursuant to Correction Law section 501.

66.    At all relevant times, defendants acted unreasonably and with deliberate indifference and disregard for the constitutional and civil rights of the detainee Shaun Humphrey. The actions of the defendants were malicious, willful, wanton, and reckless.

67.    The failure by defendants to supervise, train, or discipline personnel was so obvious that the failure to do so amounted to a policy of "deliberate indifference."

68.    Such acts as alleged herein were the proximate cause of injury and damage to the inmate, detainee, and/or prisoner.

### FOURTH CAUSE OF ACTION
### AGAINST THE COUNTY AND SHERIFF DEFENDANT

### AMERICANS WITH DISABILITIES ACT

### (Unlawful Discrimination Against Qualified Individuals with Disabilities)

69.     Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as if set forth fully herein.

70.     Erie County Holding Center ("ECHC"), which is owned and/or operated by defendant, the County, is a public facility subject to the Americans with Disabilities Act (ADA).

71.     Mental health conditions are a "disability" under the ADA. See 42 U.S.C. §12102 and 12131(2); 28 C.F.R. §35.108.

72.     The ADA applies to individuals, such as Shaun Humphrey, who require or are receiving treatment for mental health conditions, and drug and alcohol treatment.

73.     Defendants denied Shaun Humphrey, the benefit of medical programs through the Erie County Holding Center on the basis of his disability.

74.     Defendants refused to and/or failed to make a reasonable accommodation to Shaun Humphrey, by providing him with Treatment/Medication for Addiction Treatment for opioid and/or alcohol use disorders, thereby discriminating against him on the basis of disability, even though accommodation would in no way alter the nature of the healthcare program. Upon information and belief, defendants do not deny medically necessary, physician-prescribed medications to other detainees with serious, chronic medical conditions, such as diabetes.

75.     As a result of the foregoing, plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## FIFTH CAUSE OF ACTION
## AGAINST THE DEPUTY AND SUPERVISOR DEFENDANTS

### (42 U.S.C. §1983 Excessive Force)

76.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

77.     By their unlawful actions as described herein, the Deputy and Supervisor defendants, under color of law, subjected Shaun Humphrey, to the deprivation of rights, privileges, or immunities guaranteed and secured by the United States Constitution, namely, Shaun's rights to freedom from unreasonable seizure by the use of unlawful, unnecessary, and excessive use of force against Shaun Humphrey.

78.     The Deputy and Supervisor Defendants violated rights held by Shaun Humphrey which were clearly established, and no reasonable official similarly situated as defendants could have believed that such conduct was lawful or within the bounds of reasonable discretion. Therefore, defendants lack qualified or statutory immunity from suit or liability.

79.     The Deputy and Supervisor Defendants' use of force was sufficiently unreasonable and conscience shocking.

80.     The actions of the Deputy and Supervisor Defendants, as described herein, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Shaun Humphrey. As a result of this intentional conduct, plaintiff, is entitled to punitive damages against defendants, in an amount sufficient to punish them and to deter others from similar conduct.

81.    Plaintiff was required to hire attorneys to represent her in this action and is thus entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION
### (Failure to Intervene)

82.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

83.    "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994).

84.    An officer who fails to intercede when unlawful, unnecessary, and excessive force is used, or another constitutional violation occurs, is liable for the preventable harm caused by the actions of other officers.

85.    Here, upon information and belief there were several deputies and/or supervisors who had a "realistic opportunity" to intervene and prevent unlawful and unnecessary force yet failed to do so.

86.    The actions of the Deputy and Supervisor Defendants, as described herein, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted against Shaun Humphrey. As a result of this intentional conduct, plaintiff is entitled to punitive damages against defendants, in an amount sufficient to punish them and to deter others from similar conduct.

87.    Plaintiff was required to hire attorneys to represent her in this action and is thus entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## SEVENTH CAUSE OF ACTION AGAINST THE MEDICAL DEFENDANTS
## AND ERIE COUNTY
## (MEDICAL NEGLIGENCE UNDER NEW YORK LAW)

76.     Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as if set forth fully herein.

77.     Upon information and belief, the incident hereinbefore described and the resultant injuries and death were caused as a result of the negligence, carelessness, recklessness and/or unlawful conduct on the part of the agents, servants, and/or employees of defendant, Erie County, and the Medical Defendants, and more particularly, among other things, in their failing and omitting to properly and in a timely manner administer, provide and/or ensure for adequate medical treatment, including transport, assessments, monitoring, examinations and medications; in restraining a detainee experiencing a medical crisis; in failing to properly and in a timely manner respond to Shaun Humphrey's medical complaints, symptoms and requests for treatment and/or medication; in deliberately, purposefully, and knowingly denying detainees like Shaun Humphrey access to necessary medical treatment; in deploying unlawful force because of illness and/or requests for medical aide; and in negligently furthering the deterioration of Shaun Humphrey's medical condition by ignoring his symptoms and complaints.

78.     Upon information and belief, the incident hereinbefore described and the resultant injuries and death were caused as a result of the negligence, carelessness, recklessness and/or unlawful conduct on the part of the agents, servants, and/or employees of defendant, Erie County, and the Medical Defendants, was caused by those acts and omissions of the agents, servants and/or employees of Erie County, and the Medical Defendants, in their failure to properly and adequately train, supervise, instruct their employees, staff and/or officers with regard to prone restraint; the proper and timely medical treatment of detainees; in failing to properly and adequately train,

supervise, instruct their employees, staff and/or officers in recognizing the signs and symptoms of prone restraint; in the failure to respond to Mr. Humphrey's medical crisis in an expeditious manner; and in violating Mr. Humphrey's state and federal constitutional and statutory rights as well as internal policies by engaging in excessive force, failing to provide adequate medical care, and failing to take reasonable measures to guarantee the safety of Mr. Humphrey.

## RELIEF REQUESTED

Plaintiff, respectfully requests that this Court:

a. Exercise jurisdiction over plaintiff's claims and grant her a jury trial;

b. Award plaintiff economic and non-economic damages, in an amount to be ascertained according to proof, and interest on said sums from the date of Judgment;

c. Award plaintiff punitive damages against defendant in an amount sufficient to punish him and deter others from similar conduct;

d. Award plaintiff reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988; and

e. Grant plaintiff such other and further relief as this Court deems just and appropriate, including, declaratory and injunctive relief

a. appointing experts to investigate and identify appropriate solutions to the chronic and unconstitutional practices described herein.

DATED:    Buffalo, New York
          February 28, 2025

LIPSITZ GREEN SCIME CAMBRIA LLP

By: /s/ Melissa D. Wischerath
MELISSA D. WISCHERATH, ESQ.
Attorneys for Plaintiff
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333